83 P.3d 781

STATE of Idaho, Plaintiff–Respondent,

v.

Jason Matthew PETEJA, Defendant–Appellant.

No. 28170.

Court of Appeals of Idaho.

July 7, 2003.

Review Denied Nov. 20, 2003.

608

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

GUTIERREZ, Judge.

Jason Matthew Peteja was convicted of felony destruction of evidence after he swallowed a plastic bag during a police investigation involving illegal drugs. Peteja contends that the jury instructions did not delineate all the elements needed to constitute that offense as a felony, but only sufficed to render that crime a misdemeanor. We affirm.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

On May 19, 2001, Peteja threw a piece of paper from a parked car's passenger window as a patrol car drove by. The officer stopped and asked Peteja for identification after being told that the car's operator did not have her driver's license. Peteja complied and exited the vehicle upon request. The officer conducted a pat-down search and asked Peteja whether he possessed any weapons or drugs. Peteja admitted to having marijuana, which the officer then found in Peteja's pocket. During subsequent questioning, the offi-

cer observed Peteja rolling what appeared to be a plastic bag around in his mouth. The officer applied a pressure hold, which did not prevent Peteja from swallowing. After Peteja opened his mouth, the officer noted that its interior was coated with a slimy, powdery white substance. Upon the officer's request, Peteja spit onto a piece of paper, and that saliva later tested positive for methamphetamine.

Peteja was charged with and convicted on a felony count of destruction, alteration, or concealment of evidence, I.C. § 18–2603, and two misdemeanor counts, possession of marijuana, I.C. § 37–2732(c), and possession of drug paraphernalia, I.C. § 37–2734A. Peteja was sentenced to a unified term of four years, with one year determinate, on the felony conviction. Peteja timely appeals from his felony judgment of conviction.

## II.

## ANALYSIS

Peteja argues that the district court erred as to the jury instructions and that the evidence was insufficient to convict him of felony destruction of evidence. The state counters that, taken as a whole, the jury instructions correctly informed the jury on all the essential elements of felony destruction of evidence, and that substantial and competent evidence was presented to uphold the verdict. The state also argues that, even if the district court erred in instructing the jury, any such error was harmless.

## A. Jury Instructions

 Whether the jury has been instructed properly is a question of law over which we exercise free review. *State v.*

*Keaveny*, 136 Idaho 31, 33, 28 P.3d 372, 374 (2001). On appeal, we examine whether, based upon the facts of the case, the given instructions as a whole, fairly and accurately reflect the applicable law. *Id.* The trial court is required to provide instructions on all matters of law necessary for the jury's information. I.C. § 19–2132(a). Any error, defect, irregularity, or variance that does not affect substantial rights shall be disregarded, however. I.C.R. 52. Thus, to constitute error entitling a defendant to relief, an instruction must mislead the jury or prejudice the defendant. *State v. Hanson*, 130 Idaho 842, 844, 949 P.2d 590, 592 (Ct.App.1997).

Peteja was charged with a felony under Idaho Code section 18–2603 for the willful destruction of a clear plastic bag containing a white powder substance.[1] The information alleged that Peteja acted "knowing that the baggy was about to be produced, used or discovered as evidence in a felony investigation authorized by law, and with the intent to prevent it from being so produced, used or discovered." The district court's Instruction 7 advised the jury of this charge and the alleged facts in nearly identical language. Largely mirroring the information, Instruction 10 supplied the court's view of the statutory elements of a felony offense under section 18–2603 and directed the jury, in relevant part, that:[2]

[i]n order for the defendant to be guilty of willfully destroying and/or concealing evidence, the state must prove each of the following:

1. On or about May 19, 2001

2. in the state of Idaho,

3. the defendant . . . willfully

fense, in which case said person is guilty of a felony. . . .

Thus, section 18–2603 establishes the destruction, concealment, or alteration of evidence as a misdemeanor offense, unless "the trial, proceeding, inquiry or investigation is criminal and involves a felony offense," in which case the crime is a felony offense.

---

1. Idaho Code section 18–2603 reads:

 Every person who, knowing that any book, paper, record, instrument in writing, or other object, matter or thing, is about to be produced, used or discovered as evidence upon any trial, proceeding, inquiry, or investigation whatever, authorized by law, wilfully destroys, alters or conceals the same, with intent thereby to prevent it from being produced, used or discovered, is guilty of a misdemeanor, unless the trial, proceeding, inquiry or investigation is criminal in nature and involves a felony of-

2. Idaho has neither a pattern jury instruction nor case law approving a jury instruction for a felony offense under section 18–2603.

**610**

4. destroyed and/or concealed a clear baggy with a white powder substance, and

5. knew said baggy was about to be produced, used, or discovered as evidence in an investigation authorized by law, and

6. with the intent to prevent said baggy from being so produced, used, or discovered.

Instruction 11 stated, "Investigation of the possession of a controlled substance is a felony investigation authorized by law." Instructions 12 and 15 further stated that methamphetamine and marijuana are controlled substances in Idaho.

Peteja argues that Instruction 10 failed to state two statutory elements required to elevate the destruction of evidence to a felony offense. Specifically, he contends that Instruction 10 only required the state to prove that he knew that the evidence in the bag was about to be produced, used, or discovered as evidence in an "investigation authorized by law," whereas a felony violation under section 18–2603 additionally requires that the state prove that the investigation is "criminal in nature" and "involves a felony offense." Without these two elements, Peteja contends that Instruction 10 defined a misdemeanor charge, and not the felony charge of which he was convicted.

Peteja also challenges Instruction 11. First, he alleges that Instruction 11 invaded the jury's province to decide whether the alleged destruction of evidence occurred during a felony investigation. Second, he argues that Instruction 11 incorrectly stated the law because the possession of certain quantities of marijuana could constitute a misdemeanor offense and therefore, the investigation of marijuana possession could constitute a misdemeanor investigation.

At oral argument, the state conceded that Instructions 10 and 11 were flawed. The state agreed that Instruction 10 omitted the element of an investigation involving a felony offense. The state countered, however, that the jury could not have found that the investigation related to a misdemeanor possession of marijuana charge at the time that Peteja was being investigated for the bag and white substance in his mouth. The state conceded that Instruction 11 did not supply a complete statement of the correct law, but argued that it nevertheless reflected the law applicable to Peteja's case.

 Section 18–2603 establishes two classifications for the crime of the destruction, alteration, or concealment of evidence. First, the statute classifies the crime as a misdemeanor offense. Parsing out the statute's text and linguistic meaning, the elements of this misdemeanor offense are as follows:

1. The defendant knew that an object was about to be produced, used, or discovered as evidence in any legally authorized trial, proceeding, inquiry, or investigation;

2. The defendant willfully destroyed, altered, or concealed that object; and

3. The defendant in acting to destroy, alter, or conceal that object intended to prevent the object's production, use, or discovery.

Second, section 18–2603 elevates the misdemeanor to a felony offense where "the trial, proceeding, inquiry or investigation is criminal in nature and involves a felony offense." This language modifies only the first above-stated statutory element, which may be restated for a felony destruction of evidence offense as follows:

1. The defendant knew that an object was about to be produced, used, or discovered as evidence in any legally authorized trial, proceeding, inquiry, or investigation involving a felony offense.

 In Element 5 of its Instruction 10, the district court required the state to prove that Peteja knew that the evidence was about to be produced in a legally authorized investigation. We conclude that the instruction incorrectly articulated the law applicable to the felony destruction of evidence because it failed to require the jury to find that the investigation was "criminal in nature" and "involve[d] a felony offense."

Our analysis does not end there, however, because, although the legal authorization element is straightforward to articulate, the ele-

ment requiring a finding that an investigation "involves a felony offense" is less so. For example, Peteja would have us decide that the misdemeanor or felony nature of an investigation is fixed at the time that the officer begins the investigation. Under that formulation, the destruction of evidence of a felony crime during the unfolding of an investigation initially begun as to a misdemeanor crime would result in only a misdemeanor destruction charge against the defendant. Other scenarios may confuse the determination of whether an investigation "involves a felony offense" such as might have occurred in the instant case if the plastic bag had contained a quantity of marijuana constituting only a misdemeanor possession charge. Because the statutory language is ambiguous in this regard, we must engage in statutory construction so as to ascertain and give effect to the legislative intent underlying the creation of a felony offense under section 18–2603. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999).

Section 18–2603 originally provided that the destruction of evidence was punishable only as a misdemeanor. 1972 Idaho Sess. Laws, § 1, ch. 26 at 898. Then, in 1983, the legislature enacted an amendment to section 18–2603 to establish the destruction of evidence as a felony offense in certain cases.[3] The statement of purpose for the 1983 amendment reflects the legislature's intent to make the classification of the destruction of evidence offense conform to the classification of the offense for which the defendant attempted to evade liability by way of that destruction, just as it had brought into conformity the offense classification for the crime of witness intimidation under section 18–2604 and the crime for which the defendant attempted to evade liability by way of that intimidation. According to that statement of purpose:

This bill amends Idaho Code § 18–2603 to provide that if a person destroys, conceals, or alters evidence, the punishment will be appropriate to the crime. Currently, altering, concealing or destroying evidence is a misdemeanor. This is so even if the evidence would have been used for a felony prosecution. It is the belief of the Attorney General's Office that if evidence would tend to show a defendant had committed a felony, that the destruction of that evidence ought also to be a felony. Current law encourages a defendant to destroy evidence in a felony prosecution in order to incur only a misdemeanor conviction. The statute proposed is compatible with § 18–2604, Idaho Code, dealing with preventing a witness from testifying.

Statement of Purpose, S.B. 1154 (1983).

■ The public policy underlying statutes criminalizing the destruction of evidence is to prevent the obstruction of justice, whether permanent obstruction by the destruction of evidence or temporary obstruction by the alteration or concealment of the evidence, thereby causing the impediment, frustration, or unnecessary prolongation of a lawful investigation. *See People v. Hill*, 58 Cal. App.4th 1078, 1088–91, 68 Cal.Rptr.2d 375, 382–83 (1997). Prior to the 1983 amendment, an individual destroying evidence of a felony crime could incur only misdemeanor liability for that destruction. With its 1983 amendment, the Idaho legislature intended to close this loophole.

■ The Attorney General advocated for the passage of the 1983 amendment in no fewer than four House and Senate Judiciary Committee meetings. The statement of purpose for the amendment adopted language from the Attorney General's winning argument, stating that a felony destruction of evidence offense should accrue "if the evidence would tend to show a defendant had committed a felony." Although the legisla-

---

3. Idaho Code § 18–2603. DESTRUCTION, *ALTERATION* OR CONCEALMENT OF EVIDENCE. Every person who, knowing that any book, paper, record, instrument in writing, or other *object*, matter or thing, is about to be produced [ ], *used or discovered as* evidence upon any trial, inquiry, or investigation whatever, authorized by law, wil[l]fully destroys, *alters* or conceals the same, with intent thereby to prevent it from being produced, *used or discovered*, is guilty of a misdemeanor, *unless the trial, proceeding or inquiry is criminal in nature and involves a felony offense, in which case said person is guilty of a felony . . . .*

1983 Idaho Sess. Laws, § 1 at 671 (emphasis of amending language in original).

ture did not incorporate this "tendency to show" language into the statute itself, its inclusion of this language in the statement of purpose clarifies its intent as to the meaning of the statute's phrase, "involves a felony." It is evident the legislature did not intend to institute the restrictive limits postulated by Peteja whereby the classification of the destruction of evidence offense is fixed forever to the classification of the offense targeted by the investigation at its inception. Just as the purpose of a traffic stop is not fixed at the time the stop is initiated, neither is the purpose of a police investigation fixed upon its inception. *See State v. Parkinson,* 135 Idaho 357, 362, 17 P.3d 301, 306 (Ct.App. 2000). Also like a traffic stop, events continue to unfold during an investigation and, combined with the officer's observations and general inquiries, often give rise to legitimate reasons for new lines of inquiry and further investigation by an officer. *State v. Myers,* 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct.App.1990). The statutory construction advocated by Peteja thus would produce a palpably absurd result. In addition, such a construction would operate contrary to the legislature's purpose for the 1983 amendment by continuing to encourage defendants, by imposing only misdemeanor liability, to destroy felony evidence in investigations begun as to misdemeanor crimes.

■ Instead, we give proper effect to the legislature's intent by interpreting the stat- ute to mean that whether the investigation "involves a felony offense" depends upon on whether the evidence that was destroyed, altered, or concealed would have tended to demonstrate the commission of a felony. Based on the foregoing, we conclude that the district court's instructions should have in- formed the jury that it must find whether the

officer's investigation was "criminal in na- ture" and whether the bag and its contents that Peteja concealed would have tended to demonstrate the commission of a felony. Be- cause the given jury instructions omitted two elements of felony destruction of evidence and therefore did not provide instructions on all matters of law necessary for the jury's information, we hold that the jury instruc- tions as a whole did not fairly and accurately reflect the applicable law.

## B. Harmless Error

■ Although the jury instructions in Pe- teja's case were erroneous and may have invaded the province of the jury as to find- ings of a legally authorized felony investiga- tion, we conclude the error was harmless. *See State v. Olin,* 112 Idaho 673, 676, 735 P.2d 984, 987 (1987) (holding that, although instruction did not state element of specific intent to permanently deprive another of his property, instructions sufficed to advise jury of specific intent element); *State v. Brill,* 21 Idaho 269, 274–76, 121 P. 79, 80–81 (1912) (holding that, although instruction erroneous- ly stating that ownership of stolen money need not be proven, defendant suffered no resulting prejudice where he had based his defense upon alibi and not upon the errone- ously described element); *see also State v. McLeskey,* 138 Idaho 691, 69 P.3d 111 (2003) (deciding that, although district court failed to have jury make finding of firearm on firearm enhancement charge, error was harmless because jury was instructed to find deadly weapon, including firearm, on aggra- vated assault charge).[4]

In *Neder v. United States,* 527 U.S. 1, 15– 17, 119 S.Ct. 1827, 1837–38, 144 L.Ed.2d 35, 51–52 (1999), the United States Supreme Court considered a case in which the district

---

4. *Compare State v. Nath,* 137 Idaho 712, 716–17, 52 P.3d 857, 861–62 (2002), in which the district court properly instructed the jury as to the ele- ments of a second degree kidnapping charge against a child's father, but then itself decided whether the persons from whom the child was taken had lawful custody of her. A material element of the kidnapping crime, as it related to Nath's case, is the defendant's specific intent to keep or conceal a child from the person having lawful care or control of that child. I.C. §§ 18– 4501, –4503. The child's custody was disputed

and difficult to decipher, having been changed by numerous court orders in several states over many years. Moreover, the custody issue was pivotal where Nath's defense asserted that the family members from whom he attempted to take the child did not have lawful custody of her. The Court found error in the district court's taking of the custody question from the jury. The Court concluded that the error was not harmless be- cause it deprived Nath of the right to defend himself and because it diminished the state's burden to prove that lawful custody element.

court did not submit to the jury the materiality element of mail, wire, and bank fraud charges, but rather decided that the false statements at issue were material. Although the Supreme Court decided that under the relevant statutes materiality was an element of the charged offenses to be determined by the jury, it concluded that the omission of that element in jury instructions was subject to a harmless error analysis. *Id.* at 4, 8–11, 20–25, 119 S.Ct. at 1831, 1833–35, 1839–41, 144 L.Ed.2d at 44, 46–48, 53–57.

■ The *Neder* Court began from the position that, where a defendant has counsel and is tried by an impartial adjudicator, most other constitutional trial errors may be harmless; and that errors so profound as to be structural, and thus requiring automatic reversal, occur only in a limited class of cases. Furthermore, constitutional errors are either structural or they are not. Structural errors "infect the entire trial process," necessarily rendering it fundamentally unfair. Examples of such structural errors include racial discrimination in the selection of a grand jury, the complete denial of counsel, the denial of public trial or self-representation at trial, a defective reasonable doubt instruction, and bias of the trial judge. *Id.* at 8–9, 14, 119 S.Ct. at 1833–34, 1836, 144 L.Ed.2d at 46–47, 50.

*Neder* distinguished structural errors from the omission of an element in a jury instruction in that the latter does not *necessarily* render a trial fundamentally unfair or unreliable as a method of determining guilt. *Id.* at 9, 119 S.Ct. at 1833–34, 144 L.Ed.2d at 47 (emphasis in original). In making this distinction, the Court pointed to *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), in which the trial court, rather than the jury, decided the materiality element on a perjury charge. This failure to submit the materiality issue to the jury in *Johnson,* the Court stated, did not warrant reversal of the perjury conviction because overwhelming and uncontroverted evidence supported the finding of materiality and because the error "did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Neder,*

527 U.S. at 9, 119 S.Ct. at 1834, 144 L.Ed.2d at 47.

■ The *Neder* Court equated a jury instruction that omits an element entirely with an instruction that incorrectly describes an element. *Id.* at 10, 119 S.Ct. at 1834, 144 L.Ed.2d at 47. Because the latter instruction contained an error properly characterized as one of omission and thus was subject to a harmless error analysis, the Court held that an instruction that omits an element altogether was also subject to such analysis. *Id.* The Court further distinguished these two analogous types of erroneous jury instructions from a faulty reasonable doubt instruction. A flawed reasonable doubt instruction is a structural error that "vitiates *all* the jury's findings," whereas an instruction omitting or misstating an element is not and does not. *Id.* at 11, 119 S.Ct. at 1834, 144 L.Ed.2d at 48 (emphasis in original). A faulty reasonable doubt instruction thus produces consequences in the proceedings that necessarily are unquantifiable and indeterminate, whereas the consequences of an instruction omitting or misstating an element are limited to the jury's finding on that element. *Id.*

From this framework, the Court observed that uncontested evidence demonstrated that Neder had underreported the income on his tax returns by $5 million, and that Neder had not argued that this underreporting could be found to be immaterial. *Id.* at 16–20, 119 S.Ct. at 1837–39, 144 L.Ed.2d at 51–53. Because that evidence rationally could not have led to a contrary finding regarding the omitted element, that is, a finding that the false statements were immaterial, the Court held that the instructions' omission of that element was harmless error. *Id.* at 19–20, 119 S.Ct. at 1839, 144 L.Ed.2d at 53.

■ Considering the nature of the two elements omitted in the instruction at issue in the instant appeal, *Neder* establishes that the alleged errors are not structural, but rather non-structural. Accordingly, the omission of the two elements, an investigation "criminal in nature" and "involving a felony offense," are jury instruction defects subject to harmless error analysis.

Here, a uniformed officer observed paper being discarded through the passenger side window of a stopped vehicle. The officer stopped to question the driver and Peteja, the passenger. Peteja exited the vehicle upon the officer's request, and the officer conducted a pat-down search. Peteja admitted to marijuana possession, whereupon the officer found marijuana in Peteja's pocket. The officer then observed Peteja rolling a plastic bag around in his mouth. After unsuccessfully attempting to prevent Peteja from swallowing that evidence, the officer inspected the interior of Peteja's mouth, finding it coated with a slimy, powdery white substance. The saliva sample taken from Peteja's mouth tested positive for methamphetamine. Later questioned at trial, Peteja linked "white powder" with methamphetamine and volunteered that he knew that methamphetamine possession constituted a felony and, in limited amounts, marijuana possession constituted a misdemeanor.

The evidence, undisputed and bolstered by Peteja's own testimony, establishes that the officer's investigation of Peteja was a legally-authorized criminal investigation and that, at the time of Peteja's destruction and concealment of the evidence, the investigation involved a felony, that is, the possession of methamphetamine. Furthermore, the jury must have rejected Peteja's testimony that he did not swallow anything or attempt to destroy evidence because, in finding him guilty under the flawed instruction, the jury necessarily found that Peteja "destroyed and/or concealed a clear baggy with white powder." The error in the instruction did not affect that finding. Finally, the evidence presented at trial indicating that the bag contained methamphetamine was uncontroverted. Thus, irrespective of the jury instructions' omissions of the elements of a criminal investigation and involving a felony, we conclude that, on the whole record and beyond a reasonable doubt, the evidence on the omitted element is so clear and convincing that the return of the jury's verdict could not have been attributable to any such erroneous instruction and that Peteja consequently has suffered no harm therefrom.

As a final matter, we conclude that, beyond a reasonable doubt, substantial and competent evidence of Peteja's guilt on every material element suffices to sustain his felony conviction for the destruction or concealment of evidence. *State v. Herrera–Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct.App. 1998).

## III.

### CONCLUSION

We conclude that, although the jury instructions were erroneous as to the elements of a felony destruction of evidence crime, that error was harmless. For this reason and because the evidence suffices to sustain Peteja's conviction of that crime, we affirm.

Chief Judge LANSING and Judge PERRY concur.